OPINION
{¶ 1} This case arises from an automobile accident involving Christopher Pyros, which occurred on July 27, 2000. The accident was allegedly caused by the negligence of another motorist, Thomas R. Loparo.
 {¶ 2} On July 26, 2002, plaintiffs, Christopher Pyros, Nicholas Pyros, and Sandra Pyros, filed a complaint for declaratory relief and money damages. The complaint named various defendants, including Nationwide Mutual Fire Insurance Company ("Nationwide Fire"), Nationwide Mutual Insurance Company ("Nationwide Mutual"), Progressive Preferred Insurance Company ("Progressive"), Utica First Insurance Company ("Utica First"), Zurich Group aka Assurance Company of America ("Zurich"), and Thomas R. Loparo.
 {¶ 3} On January 23, 2003, plaintiffs voluntarily dismissed their claims against Progressive and Mr. Loparo, with prejudice. On April 22, 2003, defendant Utica First filed a motion for summary judgment. Utica First argued that the insurance policy issued by Utica First to Sunoco Food Mart (Christopher Pyros's employer at the time of the accident) was not subject to Ohio's uninsured motorist statute and that Christopher Pyros was not an "insured" under the policy. On April 30, 2003, defendants Nationwide Fire and Nationwide Mutual filed a motion for summary judgment, arguing that plaintiffs were not entitled to uninsured or underinsured ("UM/UIM") coverage under the relevant insurance policies issued by Nationwide Fire and Nationwide Mutual. In May 2003, plaintiffs moved for summary judgment against defendants Utica First, Nationwide Fire, and Nationwide Mutual. On May 27, 2003, defendant Zurich filed a motion for summary judgment. In June 2003, plaintiffs moved for summary judgment against defendant Zurich.
 {¶ 4} On August 19, 2003, the trial court granted summary judgment in favor of defendants Nationwide Fire and Nationwide Mutual. On September 3, 2003, the trial court granted summary judgment in favor of defendant Utica First. In October 2003, the trial court denied defendant Zurich's motion for summary judgment and granted plaintiffs' June 26, 2003 motion for summary judgment.
 {¶ 5} Defendant Zurich and plaintiffs appealed to this court. The appeals were docketed under case Nos. 03AP-1142 and 03AP-1146. On December 1, 2003, this court, sua sponte, consolidated the appeals for purposes of record filing, briefing, and oral argument. On March 30, 2004, and pursuant to App.R. 28, defendant Zurich moved to voluntarily dismiss its appeal. On April 13, 2004, this court dismissed the appeal in case No. 03AP-1142, noting that case No. 03AP-1146 remained pending.
 {¶ 6} In their appeal to this court, plaintiffs have asserted the following two assignments of error:
First Assignment of Error
The trial court erred in its decision of August 14, 2003, in which it held that Plaintiffs had no uninsured or underinsured motorist coverage under the insurance policies of Nationwide Mutual Fire Insurance Company and Nationwide Mutual Insurance Company.
Second Assignment of Error
The trial court erred in its decision of September 2, 2003, in which it held that Plaintiffs had no uninsured or underinsured motorist coverage under the insurance policies of Utica First Insurance Company.
 {¶ 7} Appellate review of summary judgment motions is conducted under a de novo standard. Mitnaul v. Fairmount Presbyterian Church,149 Ohio App.3d 769, 2002-Ohio-5833, at ¶ 27. Summary judgment is proper when a movant for summary judgment demonstrates: (1) no genuine issue of material fact exists; (2) the movant is entitled to judgment as a matter of law; and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56; State exrel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183.
 {¶ 8} Under their first assignment of error, plaintiffs assert that the trial court erred in holding that they are not entitled to UM/UIM coverage under the Nationwide Fire and Nationwide Mutual insurance policies. The following insurance policies were issued by Nationwide Fire and Nationwide Mutual: (1) a "Century II Auto Policy" to Nicholas R. Pyros, which was issued on April 27, 2000, by Nationwide Fire, (2) a "Golden Blanket" homeowner's policy issued to Nicholas R. and Sandra L. Pyros by Nationwide Fire, and (3) a personal umbrella policy issued to Nicholas R. and Sandra L. Pyros by Nationwide Mutual.
 {¶ 9} Plaintiffs are not entitled to UM/UIM coverage under the Century II Auto Policy ("auto policy"). Defendants Nationwide Fire and Nationwide Mutual argue that there is no UM/UIM coverage under the auto policy because the "other-owned auto" exclusion in the policy precludes coverage. Plaintiffs contend that defendants Nationwide Fire and Nationwide Mutual's argument that no UM/UIM coverage arises because Christopher Pyros was not occupying a covered auto at the time of the crash has been rejected by the courts. Plaintiffs assert that this exclusion is "an impermissible restriction on the scope of UM/UIM coverage." (Plaintiff's reply brief, at 1.)
 {¶ 10} The auto policy states, in part, as follows:
Coverage Agreement
You and a relative
We will pay compensatory damages, including derivative claims, which are due by law to you or a relative from the owner or driver of anuninsured motor vehicle because of bodily injury suffered by you or arelative. Damages must result from an accident arising out of the:
1. ownership;
2. maintenance; or
3. use;
of the uninsured motor vehicle.
(Exhibit A of motion for summary judgment of defendants Nationwide Fire and Nationwide Mutual.) Pursuant to the auto policy, an "uninsured motor vehicle" is defined to include, inter alia, a motor vehicle that is not insured or one that is underinsured. Id.
 {¶ 11} Here, the auto policy provides for exclusions to the uninsured motorist coverage. The policy provides, in relevant part, as follows:
Coverage Exclusions
This coverage does not apply to:
* * *
3. Bodily injury suffered while occupying a motor vehicle:
a) owned by;
b) furnished to; or
c) available for the regular use of;
you or a relative, but not insured for Auto Liability coverage under this policy. It also does not apply to bodily injury from being hit by any such motor vehicle.
Id. Pursuant to this exclusion, UM/UIM coverage does not apply if the injury is sustained while the motorist is occupying a motor vehicle that he or she owns, when the vehicle is not insured for auto liability coverage under the policy.
 {¶ 12} The version of R.C. 3937.18 in effect at the time the auto policy was issued authorizes this coverage exclusion. Pursuant to former R.C. 3937.18, as amended by Am.Sub.H.B. No. 261 ("H.B. 261"):[1]
(J) The coverages offered under division (A) of this section or selected in accordance with division (C) of this section may include terms and conditions that preclude coverage for bodily injury or death suffered by an insured under any of the following circumstances:
(1) While the insured is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured, if the motor vehicle is not specifically identified in the policy under which a claim is made, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy under which the uninsured and underinsured motorist coverages are provided;
* * *
(K) As used in this section, "uninsured motor vehicle" and "underinsured motor vehicle" do not include any of the following motor vehicles:
* * *
(2) A motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured[.]
 {¶ 13} In support of their argument that they are entitled to UM/UIM coverage under the auto policy, plaintiffs cite Morris v. United OhioIns. Co., Ross App. No. 02CA2653, 2003-Ohio-1708. In Morris, at ¶ 13, the Fourth District Court of Appeals concluded that "the amendment found at subsection (K)(2) is unenforceable because it is ambiguous and irreconcilable with subsection (J)(1)." The Morris court "disregard[ed] or eliminate[d] subsection (K)(2), while giving effect to subsection (J)(1)." Id. at ¶ 19. The Supreme Court of Ohio, in Kyle v. BuckeyeUnion Ins. Co., 103 Ohio St.3d 170, 2004-Ohio-4885, addressed the issue of "whether former R.C. 3937.18(J)(1) and (K)(2), effective September 3, 1997, through October 31, 2001, and September 21, 2000, respectively, are in conflict and, if so, whether they can be reconciled." Id. at ¶ 7. The Supreme Court determined that the subsections are not in conflict. Id. The Supreme Court also stated that "[f]ormer R.C. 3937.18(K) excluded certain tortfeasors' vehicles from being considered uninsured or underinsured." (Emphasis sic.) Id. at ¶ 1. Regarding former R.C.3937.18(J)(1), the Supreme Court stated, "[f]ormer subsection (J)(1) permitted the exclusion of UM/UIM coverage when the injured insured was occupying a vehicle owned by an insured but not covered under the liability portion of the policy (the `other-owned-vehicle exclusion.')" (Emphasis sic.) Id. at ¶ 9. Subsequent to the Kyle decision, the Supreme Court of Ohio, in Morris v. United Ohio Ins. Co., 103 Ohio St.3d 462,2004-Ohio-5706, reversed the judgment of the Fourth District Court of Appeals in Morris.
 {¶ 14} No party contests the trial court's finding that the accident was the result of the negligence of Mr. Loparo, an underinsured motorist. Under the reasoning of Kyle, former R.C. 3937.18(K)(2) is inapplicable to the case at bar because there is no indication that Christopher Pyros was a tortfeasor in this case.
 {¶ 15} Although former R.C. 3937.18(K)(2) is inapplicable, former R.C. 3937.18(J)(1) is applicable to the facts of this case. Here, pursuant to the policy, plaintiffs are insureds and they are generally entitled to UM/UIM coverage. However, plaintiffs are not entitled to UM/UIM coverage in certain circumstances, as specified in the coverage exclusion provision in the policy.
 {¶ 16} We find that the auto policy validly excludes UM/UIM coverage for plaintiffs under the circumstances of this case. The coverage exclusion in the auto policy at issue in this case precludes UM/UIM coverage for an insured motorist occupying a vehicle owned by the insured motorist, when the vehicle is not insured for liability coverage under the policy. The auto policy specifically lists a 1998 Benz ES300D and a 2000 Volvo S80 as insured vehicles under the policy. However, it is undisputed that Christopher Pyros, at the time of the accident, was occupying his own vehicle, a 1997 Acura. The auto policy does not list the 1997 Acura as an insured vehicle. The vehicle occupied by Christopher Pyros at the time of the accident was not insured for liability coverage under the policy. Therefore, pursuant to the exclusion provision cited above, as authorized by former R.C. 3937.18(J)(1), the auto policy does not provide UM/UIM coverage for plaintiffs relating to bodily injury sustained by Christopher Pyros while occupying his 1997 Acura.
 {¶ 17} Plaintiffs assert that the "other-owned auto" exclusion within the auto policy is invalid. Plaintiffs argue that Riggs v. MotoristsMut. Ins. Co., Franklin App. No. 02AP-876, 2003-Ohio-1657,[2] is applicable to the case at bar. In Riggs, at ¶ 49, this court held the following:
* * * [w]here the parties to a commercial automobile insurance policy seek to limit UM/UIM coverage to owned autos only, and where former R.C.3937.18 as interpreted in Linko [v. Indemn. Ins. Co. of N. Am. (2000),90 Ohio St.3d 445] is applicable to the facts of the case, on a motion for summary judgment the insurer must produce a brief description of the coverage, the premium for that coverage, and an express statement of the UM/UIM coverage limits in order to demonstrate a valid offer and rejection of UM/UIM limits equal to the limits of liability named in the policy. If the insurer fails to so demonstrate, UM/UIM coverage arises by operation of law.
 {¶ 18} Plaintiffs' reliance on the Riggs decision is misplaced. InRiggs, at ¶ 48, this court determined that "the policy's application of UM/UIM coverage to `owned autos only' is not equal to the `any auto' coverage for liability purposes and, therefore, all the elements of a valid waiver under Linko must have been demonstrated." Here, the policy provides that "bodily injury suffered while occupying a motor vehicle * * * owned by * * * furnished to; or * * * available for the regular use of * * * you or a relative, but not insured for Auto Liability coverage under this policy" are excluded from UM/UIM coverage. Thus, the UM/UIM coverage exclusion is consistent with the coverage for liability purposes, because motor vehicles that are excluded from UM/UIM coverage in this insurance contract are, by definition, already not insured for auto liability coverage under the policy.
 {¶ 19} We find Carmona v. Blankenship (2002), Franklin App. No. 02AP-14, 2002-Ohio-5003, to be instructive in this case. Just as inCarmona, the applicable version of R.C. 3937.18, as amended by H.B. 261, includes the (J)(1) subsection. In Carmona, one of the issues this court resolved was whether the motorist was precluded from UM coverage under an automobile liability policy based on an "other-owned auto" exclusion. The relevant policy language in Carmona provided as follows:
"Part C — Uninsured Motorists Coverage
"* * *
"Exclusions
"A. We do not provide Uninsured Motorists Coverage for `bodily injury' sustained by any person:
"1. While `occupying,' or when struck by, any motor vehicle owned by you or any `family member' which is not insured for this coverage under this policy. * * *"
Id. at ¶ 31-35. In Carmona, this court determined that there was no dispute that the motorist was occupying her own vehicle, and that the vehicle was not insured under the policy. Id. at ¶ 36. This court consequently resolved that "[b]ecause the State Auto policy contained an `other-owned auto' exclusion which was valid under former R.C.3937.18(J)(1), as amended by H.B. 261, UM coverage was not available to [the motorist]." Id.
 {¶ 20} Considering the foregoing, we conclude that the trial court properly determined that plaintiffs are not entitled to UM/UIM coverage under the auto policy.
 {¶ 21} The trial court determined that plaintiffs are not entitled to UM/UIM coverage under the Golden Blanket homeowner's policy. Plaintiffs have not directly contested this finding in this appeal. We concur with the trial court's analysis on this issue, as the Golden Blanket homeowner's policy was not a motor vehicle liability policy subject to the former statutory requirement to offer UM/UIM coverage.
 {¶ 22} Plaintiffs are not entitled to UM/UIM coverage under the personal umbrella policy. Plaintiffs argue that because they are insureds under the auto policy, they are entitled to coverage under the personal umbrella policy. Defendants argue that because plaintiffs are not entitled to recover under the underlying auto policy, they are not entitled to recover under the umbrella policy.
 {¶ 23} The personal umbrella policy provides, in part, as follows:
It is agreed that this endorsement is subject to the terms and conditions of the uninsured motorists coverage included in an underlying policy or policies of insurance described in the Declarations except as modified herein.
We will pay up to your Personal Umbrella policy's limit of liability the amount that an insured is legally entitled to recover from the owner or driver of an uninsured motor vehicle. Damages must result from an accident arising out of the ownership, maintenance, or use of the uninsured motor vehicle. The following conditions apply:
* * *
4. This coverage will apply only to losses that are payable byyour underlying coverage.
 {¶ 24} The Century II Auto Policy and the Golden Blanket homeowner's policy are listed as underlying policies in the policy declarations in the umbrella policy. As discussed above, plaintiffs are not entitled to UM/UIM coverage under the underlying auto policy, the Century II Auto Policy. Moreover, plaintiffs were not entitled to UM/UIM coverage under the Golden Blanket homeowner's policy. Because plaintiffs are not entitled to UM/UIM coverage under either the auto policy or the homeowner's policy, they are not entitled to UM/UIM coverage under the umbrella policy, pursuant to the terms of the umbrella policy.
 {¶ 25} In this case, plaintiffs Nicholas and Sandra Pyros asserted claims for loss of consortium. Whether parents may recover for loss of consortium of an adult child under Ohio law is a moot issue in this case, as we have determined that plaintiffs are not entitled to UM/UIM coverage under the Nationwide Mutual and Nationwide Fire policies.
 {¶ 26} Based on the foregoing, we conclude that the trial court did not err when it granted summary judgment in favor of defendants Nationwide Mutual and Nationwide Fire. Accordingly, we overrule plaintiffs' first assignment of error.
 {¶ 27} By their second assignment of error, plaintiffs assert that the trial court erred in finding that plaintiffs were not entitled to UM/UIM coverage under the Utica First insurance policy that was issued to Sunoco Food Mart, Christopher Pyros's employer at the time of the accident. In its September 3, 2003 decision granting summary judgment in favor of Utica First, the trial court determined that the Utica First policy is not an automobile liability or motor vehicle liability insurance policy and is thereby not subject to Ohio's uninsured motorist statute, R.C.3937.18, and that plaintiffs are not insureds under the Utica First policy for purposes of uninsured or underinsured motorist coverage.
 {¶ 28} Defendant Utica First argues that plaintiffs' claims are barred by Galatis, supra, and that the Utica First policy is not a motor vehicle liability policy. Even in light of Galatis, plaintiffs argue thatScott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660, is applicable to the Utica First policy. Plaintiffs also argue that the Utica First policy is a motor vehicle liability policy and that plaintiffs are insureds for purposes of UM/UIM coverage.
 {¶ 29} We agree with Utica First and find that Galatis precludes UM/UIM coverage for plaintiffs under the Utica First policy and that the Utica First policy is not an automobile liability or motor vehicle liability insurance policy.
 {¶ 30} In Galatis, at paragraph two of the syllabus, the Supreme Court of Ohio held the following:
Absent specific language to the contrary, a policy of insurance that names a corporation as an insured for uninsured or underinsured motorist coverage covers a loss sustained by an employee of the corporation only if the loss occurs within the course and scope of employment. * * *
 {¶ 31} Thus, the court limited the application of Scott-Pontzer to employees only while they are acting within the course and scope of employment. In the case at bar, it is undisputed that Christopher Pyros was not acting within the scope of his employment with Sunoco Food Mart at the time of the accident.
 {¶ 32} Plaintiffs contend that Galatis should not be applied in this case because "Utica First has waived any claim that Scott-Pontzer is inapplicable here" and because "courts should apply Galatis prospectively only." (Plaintiffs' merit brief, at 17.) We find these arguments to be unpersuasive. The Supreme Court of Ohio and this court have previously applied Galatis retrospectively. See In re Uninsured UnderinsuredMotorist Coverage Cases, supra; Adams v. Osterman, Franklin App. No. 03AP-547, 2004-Ohio-1412. Thus, pursuant to the Supreme Court of Ohio's decision in Galatis, plaintiffs are not entitled to UM/UIM coverage under the Utica First insurance policy that was issued to Sunoco Food Mart. For this reason alone, plaintiffs' second assignment of error is without merit.
 {¶ 33} We also observe that the Utica First policy is not subject to former R.C. 3937.18's requirement that an insurer offer UM/UIM coverage to its insureds under a policy of automobile liability or motor vehicle liability insurance because the policy is not an automobile liability or motor vehicle liability insurance policy. Regarding the definition of an automobile liability or motor vehicle liability insurance policy, the applicable version of R.C. 3937.18 provided as follows:
(L) As used in this section, "automobile liability or motor vehicle liability policy of insurance" means either of the following:
(1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of section 4509.01 of the Revised Code, for owners or operators of the motor vehicles specifically identified in the policy of insurance;
(2) Any umbrella liability policy of insurance written as excess over one or more policies described in division (L)(1) of this section.
(Emphasis added.)
 {¶ 34} Plaintiffs contend that the Utica First policy satisfies the definition of "automobile liability or motor vehicle liability policy of insurance," as that term was defined in former R.C. 3937.18(L). Plaintiffs cite to the following language in the policy as support for their argument:
The Commercial Liability Coverage is amended as follows:
Non-owned Auto Liability
Coverage L is extended to apply to bodily injury or property damage
arising out of the use of a non-owned auto in your business by a person other than you.
Hired Auto Liability
Coverage L is extended to apply to bodily injury or property damage
arising out of the use of a hired auto by you or your employees in the course of your business.
 {¶ 35} We find plaintiffs' argument on this issue to be unpersuasive. Even though the Utica First policy contains a "non-owned auto liability coverage" endorsement, it is not an "automobile liability or motor vehicle liability policy of insurance," as that term was defined in former R.C. 3937.18(L). Significantly, the policy does not "specifically identify" any motor vehicles. Plaintiffs, in support of their argument, cite to Davis v. State Farm Fire and Cas. Co. (Dec. 18, 2001), Franklin App. No. 00AP-1458, in which this court stated, "[w]e do not believe, by using the word `specified,' that the legislature intended to require makes, models and serial numbers." Plaintiffs also cite to the Supreme Court of Ohio's decision in Selander v. Erie Ins. Group (1999),85 Ohio St.3d 541, as support for their argument.
 {¶ 36} Regarding Selander, this court has recognized that H.B. 261 superseded this case law. See Allen v. Transportation Ins. Co., Franklin App. No. 02AP-49, 2002-Ohio-6449. As such, plaintiffs' reliance onSelander is misplaced.
 {¶ 37} Similarly, plaintiffs' reliance on Davis is unpersuasive in view of subsequent case law from this court. In Dixon v. ProfessionalStaff Mgmt., Franklin App. No. 01AP-1332, 2002-Ohio-4493, at ¶ 34, this court observed that former R.C. 3937.18(L)(1) "`significantly narrows the scope of policies that must include uninsured and underinsured motorist coverage when compared with the supreme court's interpretation of the previous version of the statute.'" Dixon, at ¶ 34, quoting Jump v.Nationwide Mut. Ins. Co. (Nov. 2, 2001), Montgomery App. No. 18880. Also, this court noted that "statements by this court in Davis,
suggesting that amended R.C. 3937.18(L)(1) does not require the makes, models and serial numbers of motor vehicles, were merely dicta and do not guide our resolution of this case." Dixon, at ¶ 34.
 {¶ 38} "In order to qualify as an `automobile liability or motor vehicle liability policy of insurance' under R.C. 3937.18(L)(1), a policy must `precisely, particularly and individually identif[y]' the motor vehicles covered." McNeely v. Pacific Employers Ins. Co., Franklin App. No. 02AP-1217, 2003-Ohio-2951, at ¶ 26, citing Gibbons-Barry v.Cincinnati Ins. Cos., Franklin App. No. 01AP-1437, 2002-Ohio-4898, at ¶ 44; see Allen; Dixon. The Utica First policy does not identify any motor vehicle "precisely, particularly and individually," and therefore is not an automobile liability or motor vehicle liability policy of insurance. Consequently, plaintiffs are not entitled to UM/UIM coverage under the Utica First policy. Thus, the trial court did not err in granting summary judgment in favor of Utica First.
 {¶ 39} For the foregoing reasons, we overrule plaintiffs' second assignment of error.
 {¶ 40} Having overruled plaintiffs' two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Brown, P.J., and Lazarus, J., concur.
[1] These subsections were unchanged by S.B. No. 57, which was effective November 2, 1999.
[2] This court's finding, in Riggs, of coverage under the business automobile liability policy, was reversed in In re Uninsured andUnderinsured Motorist Coverage Cases, 100 Ohio St.3d 302, 2003-Ohio-5888, on the basis of Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216,2003-Ohio-5849.