OPINION *Page 2 
{¶ 1} In this consolidated appeal, Allstate Insurance Company ("Allstate Insurance"), appeals from consolidated judgments of the Franklin County Court of Common Pleas that: (1) granted in part and denied in part summary judgment in favor of Allstate Insurance, and (2) granted in part and denied in part summary judgment in favor of appellee, Adam R. Rinehart, as administrator of the estate of Roshawn McBroom. For the reasons that follow, we dismiss Allstate Insurance's appeal in appellate case No. 06AP-977 for lack of subject matter jurisdiction, and we affirm the judgment of the common pleas court in appellate case No. 06AP-978.
 {¶ 2} According to joint stipulation,[1] James Nelson and Robin Dalton owned a 2002 Suzuki Hayabusa 1300 motorcycle. When this motorcycle was new, it was designed principally for use on public roadways. However, after this motorcycle was purchased, the motorcycle was modified for off-street racing. *Page 3 
 {¶ 3} After the motorcycle was modified, it was no longer "street legal," and the owners did not insure the motorcycle. The motorcycle, however, still bore a valid Ohio license plate.
 {¶ 4} Beginning sometime around June 2003, the owners stored the motorcycle in the garage of Barry Dillard and his wife. Mr. Dillard agreed that he would not operate the motorcycle without the owners' permission, except for moving the motorcycle from the garage to a trailer so that the motorcycle could be hauled to racing events.
 {¶ 5} On July 13, 2003, Mr. Dillard and others intended to load the motorcycle onto a trailer so that it could be brought to a race. However, instead of loading the motorcycle onto the trailer, Mr. Dillard drove the motorcycle on a public roadway in front of his house, lost control of the motorcycle, and struck Roshawn McBroom, who was standing on Mr. Dillard's driveway. Mr. McBroom sustained injuries as a result of the collision and later died, apparently from causes unrelated to the collision.
 {¶ 6} By an amended complaint filed in case No. 04CVC08-7983 (06AP-977), Adam R. Rinehart, the administrator of McBroom's estate, acting on behalf of the estate and Mr. McBroom's beneficiaries, asserted a negligence claim against Mr. Dillard. With court approval, Allstate Insurance intervened in the action and asserted an amended cross-claim against Mr. Dillard, seeking declaratory relief as to policies that Allstate Insurance issued to Mr. Dillard or his wife, or both.
 {¶ 7} Mr. Dillard answered Allstate Insurance's amended cross-claim. In his answer, he also appeared to assert a cross-claim against Allstate Insurance as he sought *Page 4 
an order from the trial court finding that he was entitled to coverage under a motorcycle policy that was issued to him by Allstate Insurance.[2]
 {¶ 8} Claiming that, prior to his death, Mr. McBroom had been entitled to coverage under a homeowners insurance policy issued to Mr. Dillard and his wife, and claiming that, prior to his death, Mr. McBroom had been entitled to coverage under a motorcycle insurance policy issued to Mr. Dillard, McBroom's estate moved for "summary judgment." However, this "summary judgment" motion did not seek to dispose of the estate's negligence claim against Mr. Dillard. See, generally, Black's Law Dictionary (8 Ed. Rev.2004) 1476 (defining "partial summary judgment" as "[a] summary judgment that is limited to certain issues in a case and that disposes of only a portion of the whole case"). Cf. id. at 1038 (defining "motion for summary judgment").
 {¶ 9} Agreeing with the arguments advanced by McBroom's estate in its "summary judgment" motion, Mr. Dillard joined in the estate's motion. Allstate Insurance also moved for "summary judgment" and sought a declaration that it was not required to defend or indemnify, or both, its insured.
 {¶ 10} While the parties' summary judgment motions were awaiting disposition by the trial court, Allstate Insurance dismissed without prejudice its amended cross-claim against Mr. Dillard in case No. 04CVC08-7983 (06AP-977).
 {¶ 11} Following its dismissal without prejudice of its amended cross-claim against Mr. Dillard, Allstate Insurance sought declaratory relief against Mr. Dillard and his wife in a separate action, case No. 05CVH08-9143 (06AP-978). In this action, Allstate Insurance sought a declaration finding that, under policies issued to Mr. Dillard or his wife, or both, *Page 5 
Allstate Insurance was not obligated to defend or indemnify Mr. Dillard or his wife. Claiming that he was entitled to a defense, and that he was entitled to indemnification, or contribution, or both, if he were found liable in case No. 04CVC08-7983 (06AP-977), Mr. Dillard asserted a counterclaim against Allstate Insurance in case No. 05CVH08-9143 (06AP-978).
 {¶ 12} Mr. Dillard and his wife also moved for an order consolidating the cases. The administrator of McBroom's estate joined in the Dillards' motion for consolidation, and alternatively, moved to dismiss Allstate Insurance's separate declaratory judgment action in case No. 05CVH08-9143 (06AP-978).
 {¶ 13} Granting the motion for consolidation and denying McBroom's estate's motion to dismiss Allstate Insurance's separate declaratory judgment action, the trial court consolidated the cases. The trial court also denied the parties' summary judgment motions that were filed in case No. 04CVC08-7983 (06AP-977).
 {¶ 14} After the parties in the consolidated action filed a joint stipulation in case No. 04CVC08-7983 (06AP-977), the parties moved for summary judgment in the consolidated cases. Finding that Mr. McBroom had not been covered under a motorcycle policy issued to Mr. Dillard, but instead finding that Mr. McBroom had been covered under homeowner policies, the trial court granted in part and denied in part Allstate Insurance's summary judgment motions, as well as the summary judgment motions of the administrator of McBroom's estate.
 {¶ 15} From the trial court's judgments in these consolidated cases, Allstate Insurance now appeals. Mr. Rinehart, as administrator of the McBroom estate, does not appeal from the trial court's judgments. Because the appeals in case Nos. 06AP-977 and *Page 6 
06AP-978 involve similar parties and issues, this court sua sponte consolidated these cases for purposes of appellate review.
 {¶ 16} Allstate Insurance assigns a single error for our consideration:
 THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT AND DENYING APPELLANT'S MOTION FOR SUMMARY JUDGMENT RELATIVE TO THE HOMEOWNER'S POLICY.
 {¶ 17} Because the judgment from which Allstate Insurance appeals in case No. 04CVC08-7983 (06AP-977) is not a final appealable order, we sua sponte dismiss the appeal in that case for lack of jurisdiction. See, generally, Mogavero v. Lombardo (2001), Franklin App. No. 01AP-98, citing State ex rel. White v. Cuyahoga Metro. Hous. Auth. (1997),79 Ohio St.3d 543, 544 (observing that whether subject matter jurisdiction properly lies may be raised sua sponte by an appellate court).
 {¶ 18} "Appellate courts have jurisdiction to review the final orders or judgments of lower courts within their appellate districts."Mogavero, supra, citing Section 3(B)(2), Article IV, Ohio Constitution; see, also, Gehm v. Timberline Post Frame, 112 Ohio St.3d 514,2007-Ohio-607, at ¶ 13. Absent a final appealable order, an appellate court has no jurisdiction to review a matter, General Acc. Ins. Co. v.Ins. Co. of N. Am. (1989), 44 Ohio St.3d 17, 20, and such a matter must be dismissed. Renner's Welding and Fabrication, Inc. v. Chrysler MotorCorp. (1996), 117 Ohio App.3d 61, 64; see, also, Gehm, at ¶ 14;Mogavero, supra; McClary v. M/I Schottenstein Homes, Inc., Franklin App. No. 03AP-777, 2004-Ohio-7047, at ¶ 15.
 {¶ 19} To resolve whether a judgment is final, an appellate court must engage in a two-step determination. General Acc. Ins. Co., at 21; see, also, Mogavero, supra; McClary, at ¶ 16. In McClary, this court stated: *Page 7 
 * * * First, an appellate court must determine whether the order is final pursuant to the requirements of R.C. 2505.02. If an appellate court determines that the order complies with R.C. 2505.02 and is final, then an appellate court must decide whether Civ.R. 54(B) language is required. * * *
Id. at ¶ 16, citing General Acc. Ins. Co., at 21; see, also,Mogavero, supra.
 {¶ 20} "`An order of a court is a final appealable order only if the requirements of both R.C. 2505.02 and, if applicable, Civ.R. 54(B) are met.'" Gehm, at ¶ 15, quoting State ex rel. Scruggs v. Sadler,97 Ohio St.3d 78, 2002-Ohio-5315, at ¶ 5; see, also, Chef Italiano Corp. v. KentState Univ. (1989), 44 Ohio St.3d 86, syllabus.
 {¶ 21} R.C. 2505.02(B) provides, in part, that "[a]n order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following: (1) [a]n order that affects a substantial right in an action that in effect determines the action and prevents a judgment[.]" Under R.C. 2505.02(A)(1), a "substantial right" "means a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect."
 {¶ 22} "A substantial right for purposes of R.C. 2505.02 is a legal right enforced and protected by law." Legg v. Fuchs (2000),140 Ohio App.3d 223, 226, citing State ex rel. Hughes v. Celeste (1993),67 Ohio St.3d 429, 430. Stated differently, "`[a] court order which deprives a person of a remedy which he would otherwise possess deprives that person of a substantial right.'" Legg, at 226, quoting Chef Italiano, at 88. "An order affects a substantial right if in the absence of immediate review of the order effective relief will be foreclosed." Legg, at 226, citing Bell v. Mt. Sinai Med. Ctr (1993), *Page 8 67 Ohio St.3d 60, 63, modified in part on other grounds by Moskovitz v. Mt. Sinai Med.Ctr. (1994), 69 Ohio St.3d 638, paragraph four of the syllabus.
 {¶ 23} Here, in case No. 04CVC08-7983 (06AP-977), although Allstate Insurance dismissed its amended cross-claim against Mr. Dillard, Mr. Dillard apparently asserted a cross-claim against Allstate Insurance in which he sought an order from the trial court finding that he was entitled to coverage under a motorcycle policy that was issued to him by Allstate Insurance. See, generally, Civ.R. 41(A)(1)(a) and (C);Abbyshire Constr. Co. v. Ohio Civil Rights Comm. (1974),39 Ohio App.2d 125, 129 (stating that "a counterclaim for declaratory relief is proper and valid and should not for that reason alone be subject to dismissal with plaintiff's claim when he so moves the court"); see, also,Columbus Metro. Hous. Auth. v. Flowers, Franklin App. No. 05AP-87,2005-Ohio-6615, at ¶ 15, appeal not allowed (2006), 109 Ohio St.3d 1425,2006-Ohio-1967; Forest City Palevsky Corp. v. Webster (Jan. 22, 1976), Cuyahoga App. No. 34362. Cf. Howard v. SunStar Acceptance Corp. (May 8, 2001), Franklin App. No. 00AP-70 (stating that "the case law interpreting Civ.R. 41(A)(1)(a) indicates that a counterclaim will only be found to be one `which cannot remain pending for independent adjudication,' and where the plaintiff's claims actually provide the basis for the counterclaim [sic]").
 {¶ 24} "The right to enforce the terms of an insurance policy is generally considered a substantial right." Nationwide Ins. Co. v. DaveyTree Expert Co., 166 Ohio App.3d 268, 2006-Ohio-2018, at ¶ 19, citingBrowder v. Shea, Franklin App. No. 04AP-1217, 2005-Ohio-4782, at ¶ 13, citing Marsh v. State Auto Mut. Ins. Co. (1997),123 Ohio App.3d 356, 358, appeal not allowed (1998), 81 Ohio St.3d 1432. *Page 9 
 {¶ 25} Thus, whether Mr. Dillard properly could enforce terms of a motorcycle insurance policy implicated a substantial right under R.C.2505.02. Also, the trial court's determination that Mr. Dillard's collision with Mr. McBroom was not covered under a motorcycle policy issued to Mr. Dillard, but that the collision with Mr. McBroom was covered under homeowners policies in effect determined the action as to issues of insurance coverage.
 {¶ 26} However, besides having been presented with an issue as to whether Mr. Dillard was entitled to coverage under a motorcycle policy in case No. 04CVC08-7983 (06AP-977), the trial court also was presented with a negligence claim.
 {¶ 27} Civ.R. 54(B) provides, in part:
 When more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, and whether arising out of the same or separate transactions, * * * the court may enter final judgment as to one or more but fewer than all of the claims * * * only upon an express determination that there is no just reason for delay. In the absence of a determination that there is no just reason for delay, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.
 {¶ 28} Here, notwithstanding the parties' joint stipulations in case No. 04CVC08-7983 (06AP-977) that Mr. Dillard negligently operated the motorcycle that struck Mr. McBroom and that his negligence proximately caused fractures to Mr. McBroom's right leg, the trial court did not adjudicate McBroom's estate's negligence claim. Thus, absent judicial adjudication, McBroom's estate's negligence claim is still before the trial court. *Page 10 
 {¶ 29} Moreover, although the parties jointly stipulated that "to the extent that coverage is found under a particular insurance policy, all parties agree that Plaintiff is entitled to damages in the full amount of coverage under that particular policy," and the parties further jointly stipulated that "to the extent that coverage is found under a particular insurance policy, the full amount of coverage under that particular insurance policy will be provided by Allstate to Plaintiff as payment in full of Plaintiff's damages," the trial court's judgment fails to include a factual adjudication of relief relative to the negligence claim. See Noble v. Colwell (1989), 44 Ohio St.3d 92, 96
(stating that "[a]s a general rule, even where the issue of liability has been determined, but a factual adjudication of relief is unresolved, the finding of liability is not a final appealable order even if Rule 54(B) language was employed"). (Footnote omitted.)
 {¶ 30} Also, although the trial court included "notice of final appealable order" in the caption of its decision and entry, the trial court's judgment fails to contain an express determination that there is no just reason for delay as required by Civ.R. 54(B). See Civ.R. 54(B); see, also, Noble, at 96, citing Cooper v. Cooper (1984),14 Ohio App.3d 327; Douthitt v. Garrison (1981), 3 Ohio App.3d 254; R H Trucking,Inc. v. Occidental Fire Cas. Co. (1981), 2 Ohio App.3d 269
(stating that "we hasten to add that the mere incantation of the required language does not turn an otherwise non-final order into a final appealable order").
 {¶ 31} Because the trial court's judgment in case No. 04CVC08-7983 (06AP-977) fails to dispose of all the claims before the court, because this judgment fails to include a factual adjudication of relief relative to the negligence claim, and because the trial court's judgment in that case lacks required language under Civ.R. 54(B), we must therefore *Page 11 
conclude that the judgment is not a final appealable order. Also, because the trial court's order in case No. 04CVC08-7983 is not a final appealable order, we further conclude that Allstate Insurance's appeal in case No. 06AP-977 properly must be dismissed for lack of jurisdiction.
 {¶ 32} However, as to Allstate Insurance's appeal in case No. 06AP-978 from the trial court's judgment in case No. 05CVH08-9143, we find that the trial court's declaratory judgment in that case is ready for appellate review. In that case, although the trial court found that Mr. McBroom was not covered under a motorcycle policy issued to Mr. Dillard, the trial court, nevertheless, did find that Mr. McBroom was covered under homeowners policies, thereby setting in motion Allstate Insurance's duty to provide coverage. Also, although the trial court's judgment in that case (06AP-978) does not expressly dispose of Mr. Dillard's counterclaim that he was entitled to a defense, and that he was entitled to indemnification, or contribution, or both, if he were found liable in case No. 04CVC08-7983, we find that the effect of the trial court's finding that Mr. McBroom was covered under homeowners policies resolves the issue raised by Mr. Dillard's counterclaim. See, e.g., Gen. Acc. Ins. Co., at 21, citing Wise v. Gursky (1981),66 Ohio St.2d 241 (stating that "even though all the claims or parties are not expressly adjudicated by the trial court, if the effect of the judgment as to some of the claims is to render moot the remaining claims or parties, then compliance with Civ.R. 54(B) is not required to make the judgment final and appealable").
 {¶ 33} Accordingly, because the trial court's declaratory judgment in case No. 05CVH08-9143 (06AP-978) fully resolved all claims and issues between the parties as to *Page 12 
insurance coverage issues, we find that the judgment in that case is a final appealable order that is ripe for appellate review.
 {¶ 34} Appellate review of a lower court's granting of summary judgment is de novo. Mitnaul v. Fairmount Presbyterian Church,149 Ohio App.3d 769, 2002-Ohio-5833, at ¶ 27. "`De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial.'" Id., quoting Brewer v. Cleveland CitySchools (1997), 122 Ohio App.3d 378, citing Dupler v. MansfieldJournal (1980), 64 Ohio St.2d 116, 119-120, certiorari denied (1981),452 U.S. 962, 101 S.Ct. 3111.
 {¶ 35} Summary judgment is proper when a movant for summary judgment demonstrates: (1) no genuine issue of material fact exists; (2) the movant is entitled to judgment as a matter of law; and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56; State ex rel. Grady v. State Emp. Relations Bd.
(1997), 78 Ohio St.3d 181, 183.
 {¶ 36} Under Civ.R. 56(C), a movant bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. Once a movant discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. Dresher, at 293; Vahila v. Hall (1997), 77 Ohio St.3d 421,430; Civ.R. 56(E). *Page 13 
 {¶ 37} "An insurance policy is a contract." Westfield Ins. Co. v.Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849, at ¶ 9, reconsideration denied, 100 Ohio St.3d 1548, 2003-Ohio-6789. Interpretation of an insurance contract is a matter of law, which an appellate court reviews de novo. Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm (1995),73 Ohio St.3d 107, 108; Ignazio v. Clear Channel Broadcasting, Inc.,113 Ohio St.3d 276, 2007-Ohio-1947, at ¶ 19; see, also, Rosepark PropertiesLtd. v. Buess, 167 Ohio App.3d 366, 2006-Ohio-3109, at ¶ 18.
 {¶ 38} "When confronted with an issue of contractual interpretation, the role of the court is to give effect to the intent of the parties to the agreement." Galatis, at ¶ 11, citing Hamilton Ins. Serv., Inc. v.Nationwide Ins. Cos. (1999), 86 Ohio St.3d 270, 273, reconsideration denied, 87 Ohio St.3d 1421, citing Employers' Liab. Assur Corp. v.Roehm (1919), 99 Ohio St. 343, syllabus. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." Kelly v. Med. Life Ins. Co. (1987),31 Ohio St.3d 130, paragraph one of the syllabus. When confronted with an issue of contractual interpretation, an appellate court "look[s] to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy."Galatis, at ¶ 11, citing Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, paragraph two of the syllabus.
 {¶ 39} "When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." Galatis, at ¶ 11, citing Alexander, supra. "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." Id., citing Gulf Ins. Co. v. Burns Motors, Inc. (Tex. 2000),22 S.W.3d 417, 423. *Page 14 
 {¶ 40} However, "where a contract is ambiguous, a court may consider extrinsic evidence to ascertain the parties' intent." Galatis, at ¶ 12, citing Shifrin v. Forest City Enterprises, Inc. (1992),64 Ohio St.3d 635. Nevertheless, "[a] court * * * is not permitted to alter a lawful contract by imputing an intent contrary to that expressed by the parties." Galatis, at ¶ 12, citing Shifrin, supra; Blosser v.Enderlin (1925), 113 Ohio St. 121, paragraph one of the syllabus.
 {¶ 41} "When confronted with allegations of ambiguity, a court is to objectively and thoroughly examine the writing to attempt to ascertain its meaning." State v. Porterfield, 106 Ohio St.3d 5, 2005-Ohio-3095, at ¶ 11, citing Galatis, at ¶ 11. "Only when a definitive meaning proves elusive should rules for construing ambiguous language be employed. Otherwise, allegations of ambiguity become self-fulfilling."Porterfied, at ¶ 11.
 {¶ 42} Although generally the finder of fact resolves ambiguity,Galatis, at ¶ 13, "where the written contract is standardized and between the parties of unequal bargaining power, an ambiguity in the writing will be interpreted strictly against the drafter and in favor of the nondrafting party." Galatis, at ¶ 13, citing Cent. Realty Co. v.Clutter (1980), 62 Ohio St.2d 411, 413. Because in the insurance context an insurer customarily drafts the insurance contract, Galatis, at ¶ 13, "an ambiguity in an insurance contract is ordinarily interpreted against the insurer and in favor of the insured." Id., citing King v. NationwideIns. Co. (1988), 35 Ohio St.3d 208, syllabus. Still, "`[although, as a rule, a policy of insurance that is reasonably open to different interpretations will be construed most favorably for the insured, that rule will not be applied so as to provide an unreasonable interpretation of the words of the policy.'" Galatis, at ¶ 14, quoting Morfoot v.Stake (1963), 174 Ohio St. 506, paragraph one of the syllabus. *Page 15 
 {¶ 43} Here, Allstate Insurance challenges the trial court's determination that Mr. McBroom was covered under homeowners policies issued by Allstate Insurance, thereby setting in motion Allstate Insurance's duty to provide coverage.
 {¶ 44} According to the evidence, effective June 13, 2003, with no fixed date of expiration, Allstate Insurance issued a homeowners policy to Rochelle Johnson for property located on Studer Avenue, in Columbus, Ohio. Also, effective January 11, 2003, with no fixed date of expiration, Allstate Insurance issued a homeowners policy to Rochelle and Barry Dillard for property located on Lawrence Drive, in Columbus, Ohio.
 {¶ 45} Both homeowners policies of insurance contain the following provision:
 Section II — Family Liability and Guest Medical Protection
 Coverage X
 Family Liability Protection
 Losses We Cover Under Coverage X:
 Subject to the terms, conditions and limitations of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and is covered by this part of the policy.
 We may investigate or settle any claim or suit for covered damages against an insured person. If an insured person is sued for these damages, we will provide a defense with counsel of our choice, even if the allegations are groundless, false or fraudulent. We are not obligated to pay any claim or judgment after we have exhausted our limit of liability.
 Losses We Do Not Cover Under Coverage X:
 * * *
 5. We do not cover bodily injury or property damage arising out of the ownership, maintenance, use, occupancy, renting, *Page 16 
loaning, entrusting, loading or unloading of any motor vehicle or trailer. However, this exclusion does not apply to:
 * * *
 b) any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an insured person and is being used away from an insured premise[ ]
 {¶ 46} Both policies also defined "insured person" as follows:
 3. "Insured person(s)" — means you [defined as "the person named on the Policy Declarations as the insured and that person's resident spouse"] and, if a resident of your household:
 a) any relative; and
 b) any dependent person in your care.
 Under Coverage X — Family Liability Protection * * * "insured person" also means:
 c) any person or organization legally responsible for loss caused by animals or watercraft covered by this policy which are owned by an insured person. We do not cover any person or organization using or having custody of animals or watercraft in any business, or without permission of the owner.
 d) with respect to the use of any vehicle covered by this policy, any person while engaged in the employment of an insured person.
 {¶ 47} Here, Mr. Dillard is a named insured in one homeowners policy. Also, assuming that "Rochelle Johnson" is the same person as "Rochelle Dillard," Barry Dillard, as the spouse of Rochelle Dillard née Johnson, is an "insured" under the other *Page 17 
homeowners policy.[3] Therefore, for purposes of "Coverage X," we conclude that Barry Dillard properly is an "insured person" under both homeowners policies.
 {¶ 48} At issue here is the meaning of section 5(b) of "Losses We Do Not Cover Under Coverage X." According to both policies, under "Coverage X," bodily injury arising out of the "ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer" is excluded. However, this exclusion is inapplicable to "any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an insuredperson and is being used away from an insured premise."
 {¶ 49} Allstate Insurance asserts that the motorcycle that Mr. Dillard was riding when he struck Mr. McBroom was not "designed principally for recreational use off public roads" as the motorcycle's manufacturer designed the motorcycle for use on public roadways. Allstate Insurance, therefore, reasons that coverage does not lie under the policies, and the trial court erred by finding that Mr. McBroom's accident was covered under Coverage X of the policies.
 {¶ 50} For its part, McBroom's estate contends that, although the motorcycle manufacturer designed the motorcycle for use on public roadways, at the time of the accident, the motorcycle's owners had modified the motorcycle and principally designed the motorcycle for off-street racing. McBroom's estate therefore reasons that, at the time of the accident, the motorcycle was designed principally for recreational use off public roadways and, therefore, McBroom's estate contends that the collision involving Mr. *Page 18 
McBroom was covered under Coverage X of the policies. McBroom's estate also asserts that, to the extent that the policy provisions at issue are ambiguous, these provisions must be liberally construed in favor of the insureds.
 {¶ 51} Under both homeowners policies, the term "motor vehicle" is undefined. Neither party, however, disputes whether the motorcycle that was involved in the collision properly should be considered a "motor vehicle" for purposes of Coverage X. See, generally, Merriam-Webster's College Dictionary (11 Ed.2004) 811 (defining "motorcycle" as "a 2-wheeled automotive vehicle for one or two people"); id. (defining "motor vehicle" as "an automotive vehicle not operated on rails;esp: one with rubber tires for use on highways"). Also, neither party disputes that the motorcycle at issue was not owned by Mr. Dillard and that the collision occurred on the insureds' premises.
 {¶ 52} Here, the policies provide that "any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an insured person and is being used away from aninsured premise" is not excluded by the policies' general exclusion against coverage for bodily injury arising from the use of a motor vehicle. The policies at issue do not limit their provisions to motor vehicles that originally were manufactured for recreational use off public roads, or to motor vehicles that originally were "designed principally" by a manufacturer for recreational use off public roads. Neither do the policies at issue expressly exclude motor vehicles that were later modified to be "designed principally" for recreational use off public roads under Coverage X.
 {¶ 53} Although Allstate Insurance plausibly may have intended the policies to limit the provisions to motor vehicles originally manufactured for recreational use off public roads, or to motor vehicles that originally were "designed principally" by a manufacturer *Page 19 
for recreational use off public roads, the actual language used in the policies does not reflect such an intention. If Allstate Insurance intended such limitations, it presumably could have drafted the policies to reflect such restrictions. Since it did not, we find that the express language of the policies does not support such limitations. See, generally, Kelly, supra, at paragraph one of the syllabus (holding that "[t]he intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement").
 {¶ 54} We also find that McBroom's estate's interpretation of the policies' provisions as affording coverage to Mr. McBroom is not patently unreasonable based on the vagueness of the policies' express language. At the time of the collision, modifications to the motorcycle by the owners did render the motorcycle to be "designed principally" for off-street racing.
 {¶ 55} Based on a thorough and objective examination of the language in the policies, we therefore conclude that the policies' provisions are not sufficiently precise to be given definite legal meaning. We therefore hold that the language of section 5(b) of Coverage X is ambiguous. See Galatis, at ¶ 11 (stating that if a contract can be given a definite legal meaning then a contract is unambiguous).
 {¶ 56} Because the policy provisions at issue are reasonably susceptible of more than one interpretation, we must liberally construe these ambiguous provisions in favor of the insureds, and must strictly construe these provisions against the insurer, Allstate Insurance. SeeKing, at syllabus. In determining the meaning of the policies, we also are mindful that we are directed to read these contracts as a whole giving meaning to every provision contained within them. Helberg v.Natl. Union Fire Ins. Co. (1995), 102 Ohio App.3d 679, 682, reconsideration denied, (June 26, 1995), Lucas App. No. L-94-103.
 {¶ 57} Here, after considering the language of the policies as a whole, we find that, through section 5(b) of Coverage X, Allstate Insurance appears to intend to provide limited liability coverage to homeowners for off-road motor vehicles that typically are not covered under a traditional automobile policy. In this case, the modified motorcycle that was involved in the collision was used exclusively for off-street racing and, thus, this modified motorcycle presumably would not have been covered under a traditional motorcycle policy. Furthermore, according to the jointly stipulated facts, and consistent with the requirements of section 5(b) of Coverage X, the modified motorcycle was not owned by Mr. Dillard and, at the time of the collision, the motorcycle was not used away from Mr. Dillard's premises as he struck Mr. McBroom while Mr. McBroom stood on his driveway.
 {¶ 58} Therefore, after liberally construing section 5(b) of Coverage X in favor of the insureds, after strictly construing section 5(b) of Coverage X against Allstate Insurance, and considering the policies as a whole, we conclude that, as a matter of law, the trial court did not err by finding that Mr. McBroom was covered under homeowners policies, thereby setting in motion Allstate Insurance's duty to provide coverage.
 {¶ 59} Accordingly, for the foregoing reasons, we therefore overrule Allstate Insurance's sole assignment of error; we sua sponte dismiss appellate case No. 06AP-977 for lack of subject matter jurisdiction; and we affirm the judgment of the Franklin County Court of Common Pleas in appellate case No. 06AP-978.
Case No. 06AP-977 sua sponte dismissed; judgment affirmed in case No.06AP-978.
BROWN and TYACK, JJ., concur.
[1] In common pleas court case No. 04CVC08-7983 (appellate case No. 06AP-977), the parties filed a joint stipulation. The parties, however, failed to file this joint stipulation in common pleas court case No. 05CVH08-9143 (appellate case No. 06AP-978). Because the cases in this appeal were consolidated in the trial court, and because the same operative facts underlie both actions, we presume that the joint stipulation that was filed in case No. 04CVC08-7983 (06AP-977) also applies to case No. 05CVH08-9143 (06AP-978.)
Also, on July 31, 2006, a hearing concerning the consolidated matters apparently was held before the trial court in which the parties stipulated to additional facts. Although the parties appended unauthenticated and uncertified copies of a transcript of this hearing to summary judgment motions, no party filed an original transcript with the court. Because the parties appended copies of the same transcript to their summary judgment motions, and because no party has objected to the unauthenticated and uncertified copies of the transcript, we conclude that we properly may consider the appended copies of the hearing transcript in our appellate review. See Oakley v. Reiser (Dec. 21, 2001), Athens App. No. 01CA40, at fn. 2 (stating that "[d]ocuments [that are appended to summary judgment reply memorandum] which are not sworn, certified, or authenticated by way of affidavit have no evidentiary value and generally should not be considered by the trial court. * * * Nevertheless, this court may consider unsworn, uncertified, or unauthenticated evidence if neither party objected to such evidence during the trial court proceedings."); see, also, Churchwell v. Red RoofInns, Inc. (Mar. 24, 1998), Franklin App. No. 97APE08-1125, at fn. 1.
[2] Although not captioned as a cross-claim, in his answer to Allstate Insurance's amended cross-claim, Mr. Dillard asserted: "Defendant further requests the Court for an Order determining that Defendant Barry Dillard has coverage under the Allstate policy issued to him." (Answer, filed June 8, 2005.)
[3] In a deposition filed in the trial court, Rochelle Dillard testified that her full name is "Rochelle Johnson-Dillard" and she lived on "Studer Avenue" with her husband, "Barry Anthony Dillard," and her two children. (Depo. of December 5, 2005, at 7-8.) However, in their joint stipulations in which the court relied in rendering its judgments, the parties did not stipulate that "Rochelle Johnson" was Barry Dillard's wife. *Page 1